IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-04-0150-02 |
| | § | |
| JOSE MARLON IBARRA-ZELAYA | § | (Civil Action No. H-07-1251) |
| | § | |

# MEMORANDUM AND ORDER

The defendant, Jose Marlon Ibarra-Zelaya, has filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 and he has also submitted a memorandum in support of his claims. (Docs. # 405, # 406). The government has file a response, a motion to supplement the record, and a motion to dismiss, arguing that Ibarra-Zelaya is not entitled to relief. (Docs. # 417, # 418). Ibarra-Zelaya has submitted a reply. (Doc. # 422). The Court has carefully reviewed all pertinent matters in this criminal case. Based on this review, the Court's clear recollection of the relevant proceedings, and the application of governing legal authorities, the Court **denies** the defendant's § 2255 motion and **dismisses** the corresponding civil action (H-07-1251) for the reasons set forth below.

## I. BACKGROUND AND PROCEDURAL HISTORY

On September 2, 2004, a federal grand jury in this district returned a five-count superseding indictment against Ibarra-Zelaya and six co-defendants, charging them with conspiracy and assorted offenses stemming from an illegal alien smuggling venture in March 2004, in which numerous foreign nationals were also held against their will for ransom.

(Doc. # 108). That indictment charged the defendants with conspiracy to conceal, harbor, shield, and transport illegal aliens within the United States for commercial advantage and private financial gain in violation of 8 U.S.C. §§ 1324(a)(1)(A) and 1324(a)(1)(B) (counts one, two, and three). The indictment further accused the defendants of conspiracy to commit hostage taking by seizing, detaining, and threatening the illegal aliens in order to compel others to pay a sum of money (*i.e.*, a ransom) as an explicit and implicit condition for their release in violation of 18 U.S.C. § 1203(a) and 18 U.S.C. § 2 (counts four and five).

On October 25, 2004, a jury found Ibarra-Zelaya and his co-defendants guilty as charged on all of the counts alleged in the superseding indictment. (Doc. # 168). On October 27, 2004, the jury returned a supplemental verdict as to counts one, two, and three of the indictment, finding that the offense involved between six and twenty-four aliens, and that a firearm was brandished or otherwise used and possessed.[1] (Doc. # 177). As to counts four and five, the jury found that the offense involved a demand for ransom and that a dangerous weapon was possessed. (*See id.*).

After the jury returned its verdict, the Court instructed the Probation Department to prepare a presentence report (a "PSR") for the purpose of determining punishment under the United States Sentencing Guidelines. Because Ibarra-Zelaya was convicted of multiple

---

[1] The Court requested supplemental findings by the jury in an abundance of caution in light of the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 124 S.Ct. 2531 (2004). Only shortly before the defendant's sentencing in this case, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), which held that the Guidelines were advisory and the Court (rather than a jury) was to decide sentencing issues after the trial.

counts of offenses arising under different statutes, his sentence was determined using the provisions found in § 3D1.2 of the United States Sentencing Guidelines Manual. Under § 3D1.2, the offense level for the most serious of the counts among the group, *i.e.*, the count resulting in the highest offense level, determines the relevant Guideline for the base offense level.

The most serious count in Ibarra-Zelaya's case was count four, in which he and the other defendants were convicted of conspiracy to commit hostage taking in violation of 18 U.S.C. § 1203(a). Using the relevant Guideline for hostage-taking offenses, § 2A4.1, the Probation Department determined that Ibarra-Zelaya's base level offense was 32. Because the jury found beyond a reasonable doubt that a ransom demand was made during the commission of the offense, the Probation Department recommended a 6-level increase pursuant to § 2A4.1(b)(1). The Probation Department recommended an additional 2-level increase under § 2A4.1(b)(3) because the jury also found, beyond a reasonable doubt, that a dangerous weapon was used in connection with the offense. These special offense characteristics increased or enhanced Ibarra-Zelaya's base offense level of 32 to a total offense level of 40. Ibarra-Zelaya had no criminal history points, meaning that he faced a range of imprisonment from anywhere between 292 to 365 months. On February 4, 2005, the Court sentenced Ibarra-Zelaya at the lowest end of the advisory Guideline range to serve a total of 292 months in prison, followed by a 5-year term of supervised release.

The United States Court of Appeals for the Fifth Circuit affirmed Ibarra-Zelaya's conviction and sentence in a joint appeal. *See United States v. Ibarra-Zelaya*, 465 F.3d 596

(5th Cir. 2006). He did not appeal further by filing a petition for a writ of certiorari with the United States Supreme Court.

Ibarra-Zelaya now argues that he is entitled to relief from his sentence under 28 U.S.C. § 2255. Liberally construed, Ibarra-Zelaya contends that he is entitled to relief because his sentence was calculated incorrectly under the Sentencing Guidelines. Ibarra-Zelaya blames his attorney for the sentence that he received and complains, therefore, that he was denied effective assistance of counsel because his attorney failed to object to the manner in which his sentence was calculated under the Guidelines. Arguing that he is not entitled to relief, the government has filed a motion to dismiss Ibarra-Zelaya's claims and, in support, it has also filed a motion to supplement the record with an affidavit from Ibarra-Zelaya's counsel. (Doc. # 418). Ibarra-Zelaya insists that he is entitled to relief from his flawed sentence. (Doc. # 422). After reviewing the entire record, the Court concludes that the defendant is not entitled to relief under § 2255 for reasons discussed briefly below.

## II.      **STANDARD OF REVIEW FOR SECTION 2255 MOTIONS**

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on

collateral review without a showing of cause and prejudice." *Id.* Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

The defendant proceeds *pro se* in this matter. *Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519 (1972). At the same time, however, *pro se* litigants are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

### III. DISCUSSION

#### A. Claims Challenging Technical Application of the Sentencing Guidelines

Ibarra-Zelaya argues, in essence, that he is entitled to relief under 28 U.S.C. § 2255 because his sentence was determined in error. Ibarra-Zelaya contends that this Court used the wrong version of the United States Sentencing Guidelines Manual, applying the 2004

edition instead of the 2003 edition. Ibarra-Zelaya alleges further his sentence was increased with enhancements found in § 2A4.1 of the Guidelines that were not supported by the jury's supplemental findings.

The government correctly notes that any challenge to the Court's technical application of the Sentencing Guidelines is not cognizable on collateral review. *See Kinder v. Purdy*, 222 F.3d 209, 211 (5th Cir. 2000), *cert. denied*, 531 U.S. 1132 (2001); *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). To the extent that Ibarra-Zelaya's claims concern this Court's application of the Sentencing Guidelines, his claims do not merit review under 28 U.S.C. § 2255.

Likewise, to the extent that Ibarra-Zelaya contends that his sentence was enhanced improperly, defense counsel points out in his affidavit that this issue was raised on direct appeal and rejected by the Fifth Circuit. (Doc. # 418, Exhibit A, Affidavit of Adrian Almaguer). In that regard, the Fifth Circuit affirmed the conviction and the sentence after finding no error in Ibarra-Zelaya's punishment. *See United States v. Ibarra-Zelaya*, 465 F.3d 596, 608 (5th Cir. 2006). Because Ibarra-Zelaya's objections to the sentence enhancements were raised and rejected on direct appeal, this issue is not cognizable on collateral review. *See United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986).

In this instance, nevertheless, Ibarra-Zelaya has chosen to cast his objections to the sentence he received as those for ineffective assistance of counsel. Ibarra-Zelaya was represented at trial and during his sentencing proceeding by defense attorney Adrian Almaguer. Ibarra-Zelaya alleges that Almaguer was deficient at sentencing because he failed to object to the version of the Sentencing Guidelines Manual that was used to calculate his sentence or to object to the sentencing enhancements that increased his punishment. These claims are examined below under the legal standard governing ineffective-assistance claims.

### B.   Ineffective Assistance of Counsel

Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88), *cert. denied*, 547 U.S. 1041 (2006). Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Molina-Uribe*, 429 F.3d at 518 (quoting *Strickland*, 466 U.S. at 689). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To prove prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Harris*, 408 F.3d 186, 189 (5th Cir.) (quoting *Strickland*, 466 U.S. at 694), *cert. denied*, 546 U.S. 919 (2005). The deficiencies alleged by Ibarra-Zelaya are discussed separately below under this standard.

### 1.    Use of the 2004 Sentencing Guidelines Manual

Ibarra-Zelaya claims that his counsel was deficient for failing to object to that his sentence was calculated incorrectly under the 2004 version of the Sentencing Guidelines Manual. Ibarra-Zelaya insists that his sentence should have been determined using the 2003 version of the Sentencing Guidelines Manual, which would have resulted in a base offense level of 24 and a less onerous sentence than the one that he ultimately received. Because application of the 2004 edition of Sentencing Guidelines resulted in a base offense level of 32, and a more stringent sentence, Ibarra-Zelaya contends that his counsel should have raised an objection under the Ex Post Facto Clause. Ibarra-Zelaya reasons, therefore, that attorney's deficient failure to object resulted in actual prejudice in the form of a longer sentence.

The Constitution prohibits the enactment of any "ex post facto Law." U.S. CONST. art. I, § 9, cl. 3. In that respect, the so-called Ex Post Facto Clause "forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 29 (1981) (internal quotations and citations omitted). In other words, the Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Id.*

It is well established in the Fifth Circuit that, when determining a defendant's punishment, "[a] sentencing court must apply the version of the [S]entencing [G]uidelines effective at the time of sentencing unless application of that version would violate the Ex Post Facto Clause of the Constitution." *United States v. Rodarte-Vasquez*, 488 F.3d 316, 322 (5th Cir. 2007) (quoting *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) and citing §§ 1B1.11(a), (b)(1) of the United States Sentencing Guidelines Manual). A sentencing court violates the Ex Post Facto Clause when application of a current guideline "results in a more onerous penalty" than would application of a guideline in effect at the time of the offense. *Kimler*, 167 F.3d at 893 (quoting *Miller v. Florida*, 482 U.S. 423, 431-33 (1987); *United States v. Rogers*, 126 F.3d 655, 660 (5th Cir. 1997)). If the Guidelines in effect at sentencing would result in a more onerous penalty, such that its application would violate the Ex Post Facto Clause, a sentencing court should apply the Guidelines that were in effect at the time of the offense. U.S. SENTENCING GUIDELINES MANUAL § 1B1.11(b)(1) (2004).

Contrary to Ibarra-Zelaya's claim, the record shows that his counsel did raise an objection to the base offense level calculated in the PSR. In his objections to the PSR, Ibarra-Zelaya's counsel objected that, under the relevant version of Guideline § 2A4.1, the base offense level should be 24, and not 32. (Doc. # 192). In response to this objection, the Probation Department advised that the relevant Guideline found in § 2A4.1 was amended on May 30, 2003. Prior to this amendment, § 2A4.1 had yielded a base offense level of 24. After this amendment, however, the base offense level found in § 2A4.1 was increased to 32. Because the amendment was in effect well before the offense was committed in Ibarra-Zelaya's case, the Probation Department noted that both the Guidelines Manual issued on November 1, 2003, and the Guidelines Manual issued on November 1, 2004, required a base offense level of 32. At sentencing, the Court noted that the 2004 version of the Guidelines were "the same as the 2003 version," and overruled defense counsel's objection. (Doc. # 324, *Sentencing Transcript*, at 8). Subsequently, Ibarra-Zelaya's counsel acknowledged that he had incorrectly used an older version of the Guidelines when he drafted his objection. (*Id.*).

According to this record, Ibarra-Zelaya fails to establish an Ex Post Facto violation because the 2004 edition of the Sentencing Guidelines Manual that was used to determine his sentence contained the same Guideline that was in effect at the time the offense occurred in March of 2004. Thus, Ibarra-Zelaya has not demonstrated any error in the calculation of his sentence under the applicable version of the Guidelines or that his counsel otherwise had

a valid objection to make about the version that was used to determine his sentence. Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, the defendant fails to demonstrate deficient performance or actual prejudice. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."). Accordingly, Ibarra-Zelaya fails to establish a claim for ineffective assistance of counsel on this issue.

### 2. Sentencing Enhancements

Ibarra-Zelaya contends further that his counsel was deficient for failing to object to the sentencing enhancements recommended in the PSR, based on jury findings that a ransom was demanded and that a dangerous weapon was used during the commission of the offense. Ibarra-Zelaya argues that the jury made these findings only in connection with the alien smuggling offenses committed under 8 U.S.C. § 1324(a) (counts one, two, and three), and not in connection with the hostage-taking offenses committed under 18 U.S.C. § 1203(a) (counts four and five). Because he was sentenced under the hostage-taking Guideline applicable to count four, Guideline § 2A4.1, Ibarra-Zelaya complains that his counsel erred by failing to object to the sentencing enhancements.

Ibarra-Zelaya is mistaken about the jury's findings. In its supplemental verdict, the jury expressly found that the government had proven beyond a reasonable doubt that the

defendants demanded a ransom in connection with the hostage-taking offenses charged in counts four and five. (Doc. # 177, at 6). Likewise, the jury found that the government had also proven that the defendants used a dangerous weapon in connection with counts four and five. (*Id.*). Because the jury findings support the enhancements for these specific offence characteristics under the relevant Guideline, Ibarra-Zelaya fails to show that his counsel was deficient for failing to object.

In summary, Ibarra-Zelaya has not demonstrated that his attorney's performance was deficient or that he suffered actual prejudice at his sentencing. Therefore, Ibarra-Zelaya fails to establish a valid claim for ineffective assistance of counsel or to show that he is entitled to relief under 28 U.S.C. § 2255 on this issue. Because Ibarra-Zelaya has not shown that he is entitled to relief under § 2255 on any of the issues he presents in his motion and supplemental memoranda, the government's motion to dismiss is granted.

## IV. **<u>EVIDENTIARY HEARING</u>**

A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (*per curiam*) (citing *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980)). The record in this case, as supplemented by an affidavit from the defendant's counsel, is adequate to dispose fairly of the allegations made by the defendant. A district court need inquire no further on collateral review. Therefore, an evidentiary hearing is not necessary in this instance.

## V. CERTIFICATE OF APPEALABILITY

The defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2253. Thus, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the

13

petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After carefully considering the entire record of the criminal proceeding, the Court concludes that jurists of reason would not debate whether the movant has stated a valid claim or whether any procedural ruling in this case was correct. Accordingly, a certificate of appealability will not issue.

## VI. CONCLUSION AND ORDER

Because the defendant has failed to establish an error of constitutional or jurisdictional magnitude, he is not entitled to relief under 28 U.S.C. § 2255. Based on the foregoing, the Court **ORDERS** as follows:

1. The defendant's pending § 2255 motion (Doc. # 405) is **DENIED** and the corresponding civil action (H-07-1251) is **DISMISSED** with prejudice.

2. The government's motion to dismiss and the government's motion to expand the record (Doc. # 418) are **GRANTED**.

3. A certificate of appealability from this decision is **DENIED**.

The Clerk will provide a copy of this order to the parties and will file a copy of this order with the docket in Civil Action No. H-07-1251.

SIGNED at Houston, Texas, on <u>September 27</u>, 2007.

_____
Nancy F. Atlas
United States District Judge